IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Patrick Strozier, #119519, )<br>)<br>　　　　　　　　　　Plaintiff, )<br>)<br>　vs. )<br>)<br>Colie Rushton, Warden; Scott Lewis, )<br>Major; Leroy Cartledge, Associate )<br>Warden; Ida Culbreath, Grievance )<br>Coordinator; State Classification )<br>Committee; FNU Lawrence, Officer; )<br>FNU Leverette, Officer; Frank Musier, )<br>Lieutenant; and Katherine Harmon, )<br>Officer, )<br>)<br>　　　　　　　　　　Defendants. )<br>　　　　　　　　　　　　　　　　　　) | Civil Action No. 6:05-2875-RBH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On December 21, 2005, the defendants filed a motion for summary judgment. By order filed December 22, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion on March 2, 2006. On that same date, he filed a motion to amend his complaint to "cure defects in the original complaint." The plaintiff attached a copy of the

proposed amended complaint to his motion. On March 20, 2006, this court granted the motion to amend. This court gave the defendants an opportunity to supplement their motion for summary judgment to address the plaintiff's amended complaint, and the defendants filed their supplement on March 24, 2006. Once again, by order filed on March 27, 2006, pursuant to *Roseboro*, the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the supplemented motion. The plaintiff filed his opposition on June 1, 2006, and the defendants filed a response on June 2, 2006.

## **FACTS PRESENTED**

While the plaintiff was an inmate at McCormick Correctional Institution ("MCI"), he and two other inmates, Ronnie Williams and Randy McFarlane, were inmate workers in the Chaplain's office. Defendant Major Scott Lewis received a tip from a confidential informant that the plaintiff had sexually explicit videotapes in the Chaplain's office that he was renting to other inmates. The informant identified the plaintiff as being involved with the videotapes. Major Lewis and another officer searched the office and found two sexually explicit videotapes. When the three inmates who worked in the office were brought in to be questioned by Major Lewis and defendant Associate Warden Leroy Cartledge on May 21, 2003, the plaintiff became loud and belligerent and was subsequently removed from the room and taken to a holding cell. When the plaintiff left the room, the remaining two inmates stated the plaintiff was the person who brought in the videotapes and that he would rent the tapes to other inmates for eight packs of cigarettes (Lewis aff. ¶¶ 1-13).

The plaintiff, Williams, and McFarlane were placed in the Special Management Unit ("SMU") "to ensure the integrity of the investigation and for the security of the institution" (Lewis aff. ¶ 18). Major Lewis testified that the policy of not allowing inmates to have property of another inmate in their possession or to loan their property to

2

another inmate is in place to promote the overall security of the institution and to protect both inmates and correctional officers. He further testified that preventing inmates from trading personal property cuts down on loan-sharking, robbery, and other illicit activities (Lewis aff. ¶¶ 22-28). According to Major Lewis, the decision was made to transfer the plaintiff and McFarlane to another institution because these were the two inmates who had direct access to the room where the videotapes were found (Lewis aff. ¶ 16). Accordingly, the plaintiff was transferred to Lieber Correctional Institution ("LCI") on May 21, 2003, the same day he was questioned (Lewis aff. ¶ 34).

Defendant Sergeant Katherine Harmon testified in her affidavit that she was the dorm sergeant for the dorm where the plaintiff was housed at MCI, and she inventoried his property when he was placed in SMU on May 21, 2003. The inventory property sheet that she prepared shows that there was a television set in the plaintiff's property. The plaintiff's property was placed in a storage room, and she had no further involvement with it. Sergeant Harmon did not have any involvement with the second inventory of the plaintiff's property that took place in the plaintiff's presence so that his property would be transferred to him at LCI (Harmon aff. ¶¶ 1-13, ex. 1).

According to Ida Culbreath, the Grievance Coordinator at MCI, the plaintiff filed a grievance concerning secondhand smoke in 1999. He did not file a grievance regarding his transfer to LCI, his placement in SMU on May 21, 2003, or his alleged loss of property (the television) when he was transferred to LCI (Culbreath aff. ¶¶ 9-13).

Lisa Carrington, the Grievance Coordinator at LCI, testified in her affidavit that in February 2004 the plaintiff filed a grievance concerning the loss of his television set. In that grievance, he stated that he determined on May 23, 2003, that his television had not been transferred from MCI to LCI. Inmates have 15 days after an incident occurs within which to file a grievance. As the plaintiff's grievance was not timely, it was not processed

3

by the Grievance Coordinator. Carrington further testified that the plaintiff was placed in general population upon his arrival at LCI (Carrington aff. ¶¶ 1-11).

Defendant Warden Colie Rushton of MCI testified in his affidavit that smoking inmates are not allowed to smoke in the cell if they are housed with a nonsmoking inmate. He further testified that an attempt is made to house nonsmoking inmates together, but that is not always possible. An inmate who smokes in a nonsmoking cell is subject to disciplinary action. He noted that it is difficult to enforce this policy without assistance from inmates to inform the officers if their roommate is smoking in the cell. Warden Rushton further testified that the Classification Committee deals with inmate room changes. He stated that he is not aware that the plaintiff's health was affected by exposure to secondhand smoke, nor is he aware of any medical condition from which the plaintiff suffers that would be affected adversely by exposure to secondhand smoke (Rushton aff. ¶¶ 1-19).

In his amended complaint, the plaintiff complains that (1) he was improperly exposed to environmental tobacco smoke, (2) he was improperly placed in SMU, (3) he was improperly transferred to LCI, (4) he was not provided a hearing within seven days of being placed in SMU, and (5) his television was lost and not transferred with him to LCI.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is

entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff first complains regarding his placement in SMU and his transfer to LCI, as well as his contention that he was not provided a hearing within seven days of

being placed in SMU. In *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), the United States Supreme Court stated, "Administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." The Supreme Court recognized in *Sandin v. Conner*, 515 U.S. 472, 480 (1995) ,that states may under certain circumstance create liberty interests that are protected by the Due Process Clause. The Court went on to state that placement in segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivable create a liberty interest." *Id.* at 486.

The evidence before the court shows that the plaintiff was placed in SMU, also referred to by the defendants as "lock-up," pending the investigation into the incident regarding the sexually explicit tapes found in the chaplain's office. He remained in SMU for only a few hours, and when he was transferred to LCI on the same day, he was placed into the general population. The defendants have presented evidence that the plaintiff was not placed in SMU for any punitive purpose but was instead placed there to ensure the integrity of the investigation. Pursuant to South Carolina Department of Corrections' ("SCDC") policy, a hearing was not required prior to placing the plaintiff in SMU. According to Major Lewis, generally an inmate is entitled to have a hearing on the disciplinary charges within seven days after placement in SMU. However, when an inmate is placed in lock-up and there is an ongoing investigation, correctional officials have 21 days before any hearing is required. A seven-day extension was requested and approved for the disciplinary hearing. Accordingly, the disciplinary hearing was required to be held on or before June 20, 2003, and it was held on June 12, 2003. The plaintiff was found not guilty of the charges (Lewis aff. ¶¶ 36-45).

As argued by the defendants, even if they had failed to follow policy concerning the hearing, notifying the plaintiff about the extension, or placing the plaintiff in SMU, he suffered no harm of any kind as he remained in SMU for less than 24 hours and

6

was found not guilty of the disciplinary charge. Upon his transfer to LCI on the day of the charge, the plaintiff was put into the general population. The plaintiff has no right to reside at a particular institution. Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *Wolff v. McDonnell*, 418 U.S. 539, 558-562 (1974). There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983), and *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975). In other words, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review *unless* state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 & n.1 (4th Cir. 1984)(collecting cases).

It is known from other cases previously decided in this judicial district that South Carolina law confers no protected liberty interest upon inmates of the SCDC from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See, e.g.*,*Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). *See also Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978); *Hewitt*, 459 U.S. at 468 ("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")[1]; and *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"). In other words, since the plaintiff was committed by a Court of General

---

[1]Unrelated portions of the holding in *Hewitt v. Helms* have been superannuated by later case law.

Sessions to the custody of the SCDC, the choices of where and how the plaintiff is to be confined are to be determined by the SCDC.

The plaintiff alleges that his Eighth Amendment rights were violated because he was forced to breathe secondhand tobacco smoke, also called environmental tobacco smoke ("ETS"). In *Helling v. McKinney*, 509 U.S. 25 (1993), the United States Supreme Court recognized that an inmate could assert an Eighth Amendment claim by alleging that prison officials, acting with deliberate indifference, exposed the inmate "to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Id.* at 35. The Court explained that the inmate would need to prove both the subjective and objective prongs required to show an Eighth Amendment violation. The objective prong requires that the inmate prove that "he himself is being exposed to unreasonably high levels of ETS." *Id*. The Court further explained that the proof "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* at 36. Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. The subjective prong requires a showing of deliberate indifference by the prison officials. *Id.*

In the present case, the plaintiff makes only conclusory allegations and fails to allege any facts that would state a claim under *Helling*. The plaintiff has not shown that he was exposed to unacceptable levels of ETS. Furthermore, he has not shown that the exposure created a risk of harm "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* He has presented no medical or other records to show that he suffers from any serious medical conditional as a result of ETS. The plaintiff has failed to present any evidence to show medical problems that existed prior to his transfer in May 2003 resulting from his exposure to ETS. Even if the plaintiff's cellmate did smoke, which has not been proven, the plaintiff has failed to establish any link

8

between the level of ETS and any serious medical problem he was experiencing. Thus, he has not satisfied the objective prong of the analysis.

Likewise, the plaintiff cannot satisfy the subjective prong which requires proof that the defendants acted with deliberate indifference to the plaintiff's unreasonable exposure to ETS. Importantly, "*Helling* does not guarantee plaintiff a smoke free environment." *Mills v. Clark*, No. 99-6334, 2000 WL 1250781, *5 (4th Cir. 2000) (unpublished). As noted by the defendants, there were references in the plaintiff's medical records in the mid- to late-1990s in which the plaintiff complained about exposure to ETS. However, there is no indication in the plaintiff's medical records indicating that the plaintiff was to be housed with a nonsmoker or had any type of health problems related to secondhand smoke (def. amended m.s.j. 18). The plaintiff has failed to show that defendant Warden Rushton was deliberately indifferent to his unreasonable exposure to ETS.

The plaintiff apparently alleges that the Grievance Coordinator at MCI, Ida Culbreath, improperly handled his grievance. However, it is clear that the grievance procedure is a procedural right, not a substantive right, and is not actionable under Section 1983. *See Brown v. Dotson*, 863 F. Supp. 284, 285 (W.D. Va. 1994).

The plaintiff claims that his television was not transferred with him from MCI to LCI. In his amended complaint, he states that he seeks as relief that Sergeant Harmon "justify and show why [his] television set was not transferred" from MCI to LCI (amended comp. ¶ 29). The inventory property sheet that Sergeant Harmon prepared when the plaintiff was placed in SMU shows that there was a television set in the plaintiff's property. The plaintiff's property was placed in a storage room, and she had no further involvement with it. Sergeant Harmon did not have any involvement with the second inventory of the plaintiff's property that took place in the plaintiff's presence so that his property would be transferred to him at LCI (Harmon aff. ¶¶ 1-13, ex. 1). As argued by the defendants, to the

extent the plaintiff is claiming negligence on the part of Sergeant Harmon, he fails to state a claim under Section 1983.  Further, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  The plaintiff had an adequate post-deprivation remedy available to him under South Carolina law.

If the complaint is construed to state a claim under the South Carolina Tort Claims Act, the claim should be dismissed as the plaintiff has failed to assert any facts that would imply gross negligence on the part of the defendants.  Therefore, the alleged acts of the defendants fall within the exception to the waiver of immunity set forth in South Carolina Code Annotated Section 15-78-60(25).[2]

The defendants further claim that they are entitled to qualified immunity.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it.  *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an

---

[2]This section provides:

> The governmental entity is not liable for a loss resulting from:
> ***
> (25) responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner . . . .

actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

The plaintiff has failed to state a claim regarding violation of his constitutional rights by the defendants. Furthermore, the defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

June 9, 2006

Greenville, South Carolina